**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

| | |
|---|---|
| **IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **Master File No. 2:12-MD-02327** **MDL 2327** **JOSEPH R. GOODWIN** **U.S. DISTRICT JUDGE** |
| **THIS DOCUMENT RELATES TO:** *Donna Parks, et. al., v. Ethicon, Inc., et.al.,* **Case No. 2:14-cv-10221** | |

**PLAINTIFFS DONNA AND DELBERT PARKS AND DR. DANIEL ELLIOTT'S**
**OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DR. DANIEL ELLIOTT TO**
**PRODUCE COMPENSATION RECORDS**

Plaintiffs Donna and Delbert Parks and Dr. Daniel Elliott submit this Opposition to Defendants' Motion to Compel Dr. Daniel Elliott to Produce Compensation Records and respectfully show the following:

## I.    Defendants' Motion to Compel Is Untimely

"Discovery motions such as motions to compel … must be filed prior to the close of discovery." *Wellness Group, LLC v. King Bio, Inc.*, 2013 WL 5937722, at *1 (W.D.N.C. Nov. 4, 2013). As a consequence, "[d]istrict courts in this circuit deny belated motions to compel filed close to, or after, the close of discovery." *Flame S.A. v. Industrial Carriers, Inc.*, 2014 WL 12547260, at *2 (D. Md. July 31, 2014).

The *Parks* matter is a Wave 13 case. *Ethicon* Pretrial Order # 34, Ex. A. Discovery in Wave 13 closed on December 13, 2019. *Ethicon* Pretrial Order # 346 at 2. Defendants waited, however, until December 16, ***after*** discovery had ended, to file their motion to compel. ECF No. 42. The motion to compel is untimely and should be denied. *United States v. $28,720.00 in U.S. Currency*, 2014 WL 1570925, at *1 (W.D.N.C. Apr. 17, 2014); *Flame*, 2014 WL 12547260, at *2; *Wellness Group*, 2013 WL 5937722, at *1; *see also Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000) (finding no merit to contention that district court's denial of discovery motion was error where the motion was filed two months after the date set by the court for completion of discovery and the plaintiffs gave no excuse for tardiness); *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 94 (1st Cir. 1996) (finding no abuse of discretion by the district court in denying motion to compel made one month after second discovery deadline).

This also appears to distinguish the instant case from the Court's November 7, 2019 telephonic hearing in the *Carbon, Burris* and *Mallow* matters which were Wave 12 cases. The

discovery deadline in Wave 12 was October 25, 2019. *See* Pretrial Order No. 337.  It appears, unlike the instant motion to compel, that Defendants filed the motion to compel in *Carbon, Burris* and *Mallow **before*** the expiration of the discovery deadline.

## II.   Defendants Fail to Make the Proper Showing to Amend the Discovery Schedule

Implicit in Defendants' "motion to compel is also a request to amend the scheduling order to reopen discovery," *Flame*, 2014 WL 12547260, at *1. Since the discovery deadline already had passed at the time the defense filed its motion, *Ethicon* Pretrial Order # 346 at 2, Defendants were required to show not only "good cause" but also "excusable neglect." *See In re Ethicon, Inc.*, 2016 WL 2643294, at *1 (S.D. W. Va. May 6, 2016); Fed. R. Civ. P. 6(1)(B), 16(b)(4). Nowhere in their motion do Defendants even assert "good cause" and "excusable neglect" have been met, let alone adduce evidence to establish these facts. Nor could they do so.

The lesser threshold of "good cause" requires the defense to show it was diligent. *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995). The facts here show anything but diligence on the defense's part. On November 21, 2019, Defendants noticed Dr. Elliott's deposition for December 1 and subpoenaed records responsive to thirty-three document requests. ECF No. 28 at 1, 5-9. Six days later, on November 27, 2019, Mrs. Westerfield served her responses and objections to these document requests. *See* Ex. A.  Plaintiff agreed to produce Dr. Elliott's bills for the *Parks* matter but objected to the request for Dr. Elliott's compensation records for all other mesh litigation, the very same documents Defendant seek in their motion to compel. *See*, *e.g.*, Ex. A at 1-2. On December 1, Dr. Elliott was deposed in *Parks* . ECF No. 42-4.

Defendants had ample time to prepare and file their motion to compel within the discovery period. More than three weeks before discovery ended, Plaintiff had objected to

disclosure of the very compensation records Defendants now seek. Ex. A at 1-2. Then almost two weeks before the close of discovery, Dr. Elliott was deposed. ECF No. 42-4. On these facts, Defendants cannot demonstrate "good cause," *Cook v. Howard*, 484 Fed. Appx. 805, 819 (4th Cir. 2012); *Marcum*, 163 F.R.D. at 254, let alone the requisite "excusable neglect." *See Ethicon*, 2016 WL 2643294, at *1; Fed. R. Civ. P. 6(1)(B). The motion to compel should be denied.

## III.    Defendants' Request is Inconsistent with the Federal Rules of Civil Procedure

"Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through . . . records for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, LLC*, 557 U.S. 519, 531 (2009). But this is exactly what Defendants are attempting to do through their Motion to Compel. ECF No. 42. As a counter to such fishing expeditions, courts in "complex litigations," like this one, have "require[d] the moving party to present a sufficient demonstration that, over a period of time, an expert's opinion has materially changed in such a way so as to raise a reasonable suspicion that the compensation paid to such expert may have affected the subsequent opinion" before compensation records for other litigations can be discovered. *See Cary Oil Co. v. MG Ref. & Mktg*, 257 F. Supp. 2d 751, 757 (S.D.N.Y. 2003); *see also SEC v. Nadal*, 2012 WL 1268297, at *3 (E.D.N.Y. Apr. 16, 2012). "Here, Defendants have not pointed to any specific circumstance raising suspicion that the particular compensation paid to Dr. [Elliott] affected his opinions." *Nadal*, 2012 WL 1268297, at *4; *see also* ECF No. 42 at 1-3.

Dr. Elliott is not a "professional expert" who garners all income from work as an expert witness or consultant. *See* Ex. B at 1 [Curriculum Vitae of Daniel Elliott MD]. Instead Dr. Elliott works full-time as a Urologist at the Mayo Clinic in Rochester, Minnesota, one of the most prestigious medical institutions in the world. Ex. B at 1. Were Dr. Elliott a "professional expert" whose income was derived only from litigation support, perhaps Defendants' naked assertion of

potential bias would have more merit. But that is not the case here. *Id*. Nothing in the record justifies the defense "rummaging through [Dr. Elliott's] personal and financial records under the guise of seeking impeachment evidence." *Cary Oil*, 257 F. Supp. 2d at 757 (internal quotations omitted).

Absent any hint of evidence to support a bias argument, Defendants' are essentially arguing bias is such a central element of expert discovery that the production of this compensation information is automatic. However, such an argument is belied by the Federal Rules of Civil Procedure, which set forth in great detail not only what information is to be included by a retained expert in his or her report, but also sets out what documents the expert should produce as part of the Rule 26. *See*, *generally*, *Fed. R. Civ. P.* 26(a)(2)(B)(i) – (vi). Expert disclosure rules can be divided into two categories: (1) information related to the expert opinions in the case at issue; and (2) information related to the expert. For the former, expert reports must include: "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; and (iii) any exhibits that will be used to summarize or support them." *Fed. R. Civ. P.* 26(a)(2)(B)(i)-(iii). As to the latter, Rule 26 then requires the expert to disclose: "(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases, in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in ***the*** case." Fed. R. Civ. P. 26(a)(2)(B)(iv)-(vi) (emphasis added). Here, Dr. Elliott provided the information required by Rule 26.

Rule 26 specifically sets out that an expert must disclose all other cases in which the expert testified in the previous 4 years, but only mandates the expert provide information

regarding compensation the expert was/is to be paid for the study and testimony in the instant case. *See Fed. R. Civ. P.* 26(a)(2)(B)(v) – (vi). If the United States Supreme Court or the Judicial Conference's Committee on Rules of Practice and Procedure had felt this was automatically discoverable information, this would be reflected in the Rules of Civil Procedure. Instead, while the identification of the cases in which the expert testified in the previous 4 years was deemed discoverable, the amount of compensation the expert received in these cases was not. The U.S. Supreme Court and the Committee on Rules of Practice and Procedure did not mandate an expert provide the compensation the expert received in these previous cases and instead require the expert to produce the compensation the expert has received and will receive "in the case" should be produced by the expert. *See Fed. R. Civ. P.* 26(a)(2)(B)(i) – (vi). The reason Rule 26(a)(2)(B) requires the disclosure of "'the compensation to be paid for the study and testimony' … is to allow the opposing party to demonstrate and explore the bias of the expert." *Nadel*, 2012 WL 1268297 at *9-10 (quoting *Morrow v. Greensouth Equip., Inc*., 2010 WL 5094304, at *1-2 (N.D. Fla. Dec. 7, 2010). Rule 26(a)(2)(B) already contemplates and provides a party with the compensation information needed to "demonstrate and explore the bias of the expert." *Id*. For example, "if the expert was paid an hourly rate well above the prevailing rate for an expert the party would be able to argue to the jury that the compensation should be taken into account in assessing the credibility of the expert." *Id*.

Defendants have already been given the compensation information that the federal rules provide to explore bias. To go so far beyond what is allowed by the federal rules and get seven plus years of financial information, the Defendants must present some evidence of potential bias on the part of Dr. Elliott. *Fed. R. Civ. P.* 26(a)(2)(B)(v); *see also Cary Oil*, 257 F. Supp. 2d at 757 (finding that in order to be entitled to expert compensation information beyond the instant

case, the moving party must "present a sufficient demonstration that, over a period of time, an expert's opinion has materially changed in such a way to raise reasonable suspicion that compensation paid to such expert may have affected subsequent opinion."); *see also Nadel*, 2012 WL 1268297 at *9-10 (rejecting plaintiff's request for significant compensation information from defense expert noting "Defendants have not pointed to any specific circumstance raising suspicion that the particular compensation paid to Dr. Porter affected his opinions."). Defendants do not, and indeed cannot, assert Dr. Elliott's opinions have "materially changed" over time, nor presented any other indicia of bias.

Defendants rely heavily on Magistrate Judge Eifert's decision in *Ferrer v. Ethicon, Inc.* ECF No. 42 at 2-3. However, *Ferrer* dealt specifically with the expert(s) in that case and not the instant matter or even Dr. Elliott. Nor was any order was submitted applying the *Ferrer* order across the MDL to all cases. Most importantly, nothing in *Ferrer* indicates that the limitations on compensation information set out by Rule 26 was ever a focus of argument in that case. ECF No. 42-8 at 1-2. Nor does any language in the *Ferrer* decision suggest the expert at issue had full-time employment elsewhere, like Dr. Elliott, or that his conclusions, as with Dr. Elliott's, had not "materially changed in such a way so as to raise a reasonable suspicion that the compensation paid to such expert may have affected the subsequent opinion." *See Cary Oil*, 257 F. Supp. 2d t 757; *see also* ECF No. 42-8 at 1-2. The defense may wish for the Court to blindly follow *Ferrer*, but it is unclear how factually similar are the two cases. On the record here, the better course is for the Court to follow *Cary Oil* and require a "specific circumstance" before additional compensation discovery can be obtained.

**IV.     The Parties Have Agreed that Specific Causation Experts Need Not Produce All Mesh Billing Records**

Plaintiff understands from plaintiff leadership there is an informal agreement among the parties that limits the compensation records specific causation experts, the capacity in which Dr. Elliott was giving testimony on November 30, must produce. Limiting the production of compensation information to that contemplated by *Fed. R. Civ. P.* 26(a)(2)(B)(vi) has been the parties standing agreement in all prior wave cases involving our firm, and it has been the position of plaintiffs in general in the mesh MDLs. *See* ECF No. 42-4 at 5 (Elliott Depo. at 21:7-15).

Besides the word of leadership, there is other evidence of such an agreement in this MDL. We have had cases in prior Wave work ups, and in these cases, even where the specific causation expert was deposed, the only billing information produced was case specific. Moreover, it is telling that the authority Defendants cite is from last month. ECF No. 42 at 23; ECF Nos. 42-7, 42-8. Had there not been an agreement among the parties, we suspect this issue would have been raised in a motion to compel long ago. But Defendants haven't offered such evidence. Defendants should not be allowed to reverse course and back away from the parties' agreement on production of compensation records for specific causation experts, like Dr. Elliott, after all these years of litigation.

**V.      Personal Service of Process Is Necessary to Compel Unwilling Witness**

"[U]nder the Federal Rules, compulsory process may be served upon an unwilling witness only in person." *FTC v. Compagnie de Saint-Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1313 (D.C. Cir. 1980). Here, it was made known to Defendants before his deposition that Dr. Elliott would only be producing compensation records for his work as a specific causation expert in the *Parks* case. Ex. A. This fact was not hidden from Defendants. Limiting the production of compensation information to that contemplated by *Fed. R. Civ. P.* 26(a)(2)(B)(vi) has been the

parties standing agreement in all prior wave cases involving our firm, and it has been the position

of plaintiffs in general in the mesh MDLs. *See* ECF No. 42-4 at 5 (Elliott Depo. at 21:7-15).

Given Dr. Elliott was "unwilling" to disclose the compensation records Defendants are seeking

to be produced, it was incumbent upon them to serve Dr. Elliott with the subpoena duces tecum

in person. *FTC*, 636 F.2d at 1313.

## VI.    Defendants' Motion to Compel Is Moot

Although Judge Eifert has ordered production of compensation records of experts in the

past, ECF No. 42-8, the Court need not to reach this question due to the procedural defects with

Defendants' motion, not least being its untimely filing. Were the Court, however, to address the

merits of the motion to compel, Defendants' request is moot.

Defendants seek Court order requiring Dr. Elliott to produce his billing records in

*Ethicon* MDL cases, documents they already have. Moreover, as Dr. Elliott testified at

deposition, he doesn't keep these records after payment:

> Q:    Do you keep your invoices and financial records of the cases where you have
>        been hired as an expert in the pelvic mesh litigation?
>
> A:    Only until they are paid.

ECF No. 42-6 at 6 (Elliott Depo. at 22:15-19). Despite knowing specific billing records no

longer exist, Defendants have moved the Court to compel disclosure of these non-existent

documents.

Defendant have "request[ed] that the Court compel Dr. Elliott to produce the same

compensation documents (as redacted) that the Court ordered be produced in *Ferrer* and the

other cases referenced above." ECF No. 42 at 3. In *Ferrer*, Judge Eifert ordered disclosure of "all

invoices and payment documents related" serving as an expert witness in pelvic mesh cases. ECF

No. 42-8 at 2. These documents do not exist. ECF No. 42-6 at 6 (Elliott Depo. at 22:15-19). This

fact was known to Defendants more than two weeks before they filed their tardy motion to compel. ECF No. 42; ECF No. 42-6 at 1. Still, production of non-existent documents was the only relief the defense sought. For this reason, even if the merits of the motion to compel were considered, it should be denied as moot.

**VII.    Any Order to Compel Should Apply to Defendants' Experts as Well**

Were the Court to order Dr. Elliott to produce compensation records for work he did on other transvaginal mesh cases, the Court also should direct Defendants to produce identical compensation records for their experts, both retained and non-retained experts, and both general and case-specific experts. This would be only fair, given the parties in the mesh litigations have been operating under an agreement that required only information on case-specific compensation from specific causation experts. Otherwise, Plaintiff would be left at a disadvantage for having abided by the parties' agreement all this time.

**VIII.   Conclusion**

For the reasons set forth above, Defendants' Motion to Compel Dr. Daniel Elliott to Produce Compensation Records should be denied in its entirety.

Date: December 30, 2019                                Respectfully Submitted,

                                                      /s/     William Doyle, II
                                                      William Doyle, II (CA 188069)
                                                      DOYLE LOWTHER LLP
                                                      4400 NE 77th Avenue, Suite 275
                                                      Vancouver, WA 98662
                                                      Tel: (360) 818-9320
                                                      Fax: (260) 450-3116

                                                      *Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, I served the foregoing document and supporting exhibits on the parties in this case via the ECF system.

                                                      /s/     William Doyle, II